**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **STEPHEN NELSON,**<br><br>on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**ECOSHIELD PEST SOLUTIONS ATLANTA, LLC, ROBERT DOUGLAS CARDON, GREGORY NYGREN, THE SHIELD COMPANIES, LLC,** and **THE SHIELD CO MANAGEMENT, LLC,**<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Nelson ("Plaintiff"), by his undersigned attorneys, Wittels McInturff Palikovic and Weiner & Sand LLC, brings this consumer protection action in his individual capacity and on behalf of a class of consumers defined below against Defendants EcoShield Pest Solutions Atlanta, LLC, Robert Douglas Cardon, Gregory Nygren, The Shield Companies, LLC, The Shield Co Management, LLC, (hereafter, "Defendants" or "EcoShield") and hereby alleges the following with knowledge as to his own acts and upon information and belief as to all other acts:

## INTRODUCTION

1. This proposed class action lawsuit challenges EcoShield's deceptive sales practices and breach of its contracts with thousands of consumers across the United States.

2. EcoShield is an exterminator that claims to have over 250,000 customers across 27 states. Instead of one-off extermination services, however, EcoShield sells subscriptions for recurring extermination service plans. These subscriptions are governed by a preprinted form contract containing similar pricing terms for all of EcoShield's customers. That contract is referred to hereafter as the "Service Agreement." Plaintiff's Service Agreement is attached as Exhibit A.

3. Under the Service Agreement, each extermination visit carries a set fee. For example, after the initial service, each subsequent visit is billed at $169.

4. In addition to the visit fees, the Service Agreement authorizes EcoShield to charge only three additional fees. There is a delinquency fee for late

payments, a recovery fee for accounts sent to collections, and a handling fee for bounced checks.

5. While the Service Agreement authorizes visit fees, the delinquency fee, recovery fee, and the handling fee, the Service Agreement does not mention a cancellation fee.

6. Nevertheless, when customers like Plaintiff try to cancel their EcoShield subscription, they are charged a costly cancellation fee. For example, Plaintiff was charged an unauthorized $250 cancellation fee.

7. When customers contest this unauthorized fee, EcoShield sends their accounts to collections, threatening to harm their credit and requiring them to deal with debt collectors.

8. This is a deceptive practice. EcoShield disguises its cancellation fee as a supposed "discount." When customers sign up with EcoShield, they are automatically given an "Initial Discount" that purportedly reduces the cost of the initial service visit. For example, Plaintiff's initial service visit was supposedly automatically discounted from $400 to $150 by an "Initial Discount." But this so-called discount is no such thing. When a customer tries to cancel their subscription, EcoShield demands that the customer "repay" this "discount." EcoShield then gives the customer a Hobson's choice: repay the discount as a condition of cancellation or continue the unwanted subscription.

9. In other words, the Initial Discount is a sneaky and unauthorized cancellation fee that EcoShield claims must be paid when the subscription is cancelled.

10. By deceptively misrepresenting the actual terms and conditions of its subscription and obscuring the true nature of its cancellation fee, EcoShield misrepresents the obligations of its subscriptions. This conduct breaches the Service Agreement, violates consumer protection laws, and violates the common law.

11. This pattern, practice, and policy is intentionally designed to unfairly and unlawfully extract additional payments from unwitting consumers.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendants because they transact substantial business in Georgia, have sufficient minimum contacts with this state, and otherwise purposefully avail themselves of the privileges of conducting business in Georgia by marketing, selling, and performing services in Georgia. Further, the injuries to Georgia consumers that Plaintiff seeks to prevent through public injunctive relief arise directly from EcoShield's continuing conduct in Georgia, including, but not limited to, directing its scheme at Georgia consumers.

13. Plaintiff and Defendants entered into the Service Agreement in Georgia, all services under the Service Agreement were performed in Georgia, and all payments were made in Georgia.

14. All Defendants work in concert to perpetuate the scheme described herein, and all Defendants operate as a single fictitious entity or brand called "EcoShield[,]" "EcoShield Pest Solutions[,]" or "EcoShield Pest Control." This includes operating a single website, holding themselves out as a single entity, and frequently referring to fictitious entities or brands like "EcoShield" or "EcoShield Pest Control" in communications with customers. Upon information and belief, all Defendants maintain uniform policies and practices with respect to the allegations herein.

15. Defendants operate the www.ecoshieldpest.com website. According to that website, EcoShield does business in Arizona, California, Colorado, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Washington, Virginia, and Wisconsin.[1] EcoShield's public statements about its geographic coverage imply that it is a single company operating in all 27 states.

16. EcoShield lists the address for its regional offices, but each location offers potential new clients the same phone number. Moreover, all customers with billing questions, regardless of geographic location, are directed to call the same

[1] https://www.ecoshieldpest.com/office-locations-2024.

phone number. This implies that one entity is responsible for collection of all EcoShield customer receivables.

17. "EcoShield" lists one single corporate address, located in Arizona as its "CORPORATE ADDRESS."[2]

18. According to its website, EcoShield is "[t]rusted by over 250,000+ Homes and Businesses."

19. "EcoShield" is a registered trademark with the United States Patent and Trademark Office ("USPTO"). Its registration date was March 12, 2013. The USPTO specifies that the "EcoShield" trademark is for "Pest control; Pest control and extermination other than for agricultural purposes; Termite and pest control."[3] According to the USPTO, when Plaintiff signed up, the "EcoShield" trademark was owned by Defendants Robert Douglas Cardon and Gregory Nygren.

20. On March 17, 2022, Defendants Cardon and Nygren submitted printouts of the www.ecoshieldpest.com website to the USPTO in support of a declaration of use of the "EcoShield" trademark.

21. According to the USPTO, on May 6, 2024, Defendants Cardon and Nygren assigned their interest in the EcoShield trademark to Defendant The Shield Companies, LLC.

[2] https://www.ecoshieldpest.com/contact.

[3] https://tsdr.uspto.gov/ - caseNumber=85676487&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=documentSearch

22. This Court has subject-matter jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants.

23. This Court has original subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act. However, if the Court determines that it lacks original jurisdiction over any claim in this action, it may exercise supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367 because all claims arise from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiff resides in this District, the Service Agreement was executed in this District, the pest extermination services were performed in this District, all payments were made in this District, and Defendants reside in this District for venue purposes. *Id.* § 1391(c)(2).

## PARTIES

25. Plaintiff Stephen Nelson is a citizen of Georgia and lives in Kennesaw, Georgia. He executed the Service Agreement on June 28, 2022. Plaintiff received all services in Georgia. Defendants charged Plaintiff the improper cancellation fee on

or around April 8, 2025. Plaintiff paid the $250 cancellation fee on or around April 8, 2025.

26. The April 8, 2025 invoice sent to Plaintiff by Defendants refers to the cancellation fee as an "Annual Commitment Discount Payback[,]" but Plaintiff's contract with EcoShield contains no mention of any such "Annual Commitment Discount."

27. Plaintiff is a consumer who was victimized by EcoShield's unlawful scheme, suffered injury in fact, and lost money because of EcoShield's breach of contract, consumer protection law violations, and common law violations.

28. EcoShield Pest Solutions Atlanta, LLC is a limited liability company registered in the state of Arizona. Its registration with the state of Arizona lists its address as 275 E. Rivulon Blvd., Suite 106, Gilbert, AZ 85297. The Service Agreement lists a phone number with a Georgia area code, provides a Georgia business license number, and provides an email address called "atlanta@theshieldco.com." EcoShield Pest Solutions Atlanta, LLC has a registered agent located in the State of Georgia and lists The Shield Co Management, LLC as its Manager and The Shield Companies, LLC as members of the LLC.

29. Defendants Robert Douglas Cardon and Gregory Nygren were the legal owners of the EcoShield trademark at the time Plaintiff executed and performed the Service Agreement. According to the USPTO, Defendants Cardon and Nygren are natural persons residing in the state of Arizona.

30. The Shield Companies, LLC is a limited liability company registered in the state of Arizona. It is listed as a Member of The Shield Co Management, LLC, which is the Manager of Ecoshield Pest Solutions Atlanta, LLC. EcoShield Pest Solutions, Atlanta LLC employees use the email domain "@theshieldco.com," and EcoShield Pest Solutions Atlanta, LLC uses the email address "atlanta@theshieldco.com." On May 6, 2024, Defendants Cardon and Nygren assigned their interest in the trademark "EcoShield" to The Shield Companies, LLC. Accordingly, upon information and belief, The Shield Companies, LLC is the current owner of the EcoShield trademark. Defendant The Shield Co Management, LLC is the Manager of The Shield Companies, LLC, and Defendants Cardon and Nygren are Members of The Shield Companies, LLC.

31. The Shield Co Management, LLC is a limited liability company registered in the state of Arizona. Arizona registration records list The Shield Co Management, LLC as a Manager of EcoShield Pest Solutions Denver, LLC. Defendant The Shield Companies, LLC is the sole Member of The Shield Co Management, LLC. Defendants Cardon and Nygren, along with non-party Jason Jonas, are Managers of The Shield Co Management, LLC. The Shield Co Management, LLC holds itself out to the public as being the owner of the EcoShield

brand. A job posting for The Shield Co Management, LLC claims that EcoShield is a brand of The Shield Co Management, LLC.[4]

32. Upon information and belief, at all times pertinent to this action, the finances, policies, and business practices of Defendants were dominated and controlled by one another in such a manner that each individual Defendant has no separate mind, will, identity, or existence of its own and instead operated as mere instrumentalities and alter egos of one another.

## FACTUAL ALLEGATIONS

### A. EcoShield's Unauthorized and Deceptive Cancellation Fee

33. The term of EcoShield's Service Agreement is "for an initial period of 36 months." Ex. A (Service Agreement) at 1.

34. The Service Agreement contains a box that outlines the customer's "BIMONTHLY Subscription." *Id.* That box states that there will be a $150 charge for the first visit followed by six bimonthly extermination services each year. *Id.* Each bimonthly service visit carries a separate $169 charge. *Id.*

35. In addition to the specified service charges, the Service Agreement purports to disclose all other fees a customer might incur. These fees are limited to a "late fee" for late payments, a "recovery fee" for accounts sent to collections, and a fee for bounced checks. *Id.* at 1.

[4] https://www.wayup.com/i-j-The-Shield-Co-Management-LLC-232331166968218/

36. The Service Agreement does not authorize EcoShield to charge a cancellation fee.

37. Below a box fully listing the charges for the "BIMONTHLY Subscription," the Service Agreement has a column for "Initial Service / Warranties" which lists the "Full Initial Service Charge" as $400 but also automatically applies a supposed $250 "Initial Discount" to the purported $400 original price. *Id.*

38. At the bottom of the Service Agreement is a green box containing a paragraph of fine print. Within that fine print, EcoShield buries a trap for unsuspecting consumers. *Id.*

39. This paragraph opens with a statement that "You, the customer, may cancel this transaction any time prior to midnight of the third business day after the day of this transaction by giving written notice of cancellation to EcoShield Pest Solutions Atlanta, LLC." *Id.*

40. Beneath that sentence, the Service Agreement states that, "[i]f, for any reason, at any time after receiving the initial service the contract is cancelled before it completion, customer agrees to pay the full initial service charge less amount already paid for the initial service." *Id.* (grammatical errors in original).

41. Unbeknownst to a reasonable consumer, EcoShield interprets this fine print to mean that a customer canceling at any point during the subscription term must pay EcoShield the $250 "discount" it automatically applied to the initial service

charge as a cancellation fee. In other words, EcoShield misrepresents a $250 cancellation fee as an "Initial Discount."

42. The "Initial Discount" is not actually a discount, but rather a secret and unauthorized cancellation fee that must be paid when the subscription is cancelled.

43. By deceptively misrepresenting and omitting the true nature of its cancellation fee, EcoShield both misrepresents the price of its subscription and induces unsuspecting consumers to assume subscription-related obligations that are not properly disclosed.

44. The Service Agreement's failure to adequately explain EcoShield's cancellation fee practices also constitutes a material omission. The Service Agreement's misrepresentation of its "Initial Discount" as a discount, rather than a hidden cancellation fee, constitutes a material misrepresentation because no reasonable consumer would understand an "Initial Discount" as a hidden cancellation fee that must be paid back to the seller.

45. Moreover, by making material misrepresentations and omissions about its cancellation fee, EcoShield is able to charge consumers a price premium for its subscriptions that is greater than it would otherwise have been able to charge.

**B. Plaintiff's Experience with EcoShield**

46. Following a door-to-door solicitation, Plaintiff signed the Service Agreement with EcoShield on June 28, 2022. Ex. A. Before signing the Service Agreement, Plaintiff reviewed it to understand what signing it entailed.

47. Plaintiff paid the initial service charge and thereafter paid sixteen bimonthly service charges. Plaintiff paid a total of $2,704 for these sixteen separate visits.

48. Dissatisfied with EcoShield's services, Plaintiff wrote to cancel his subscription.

49. After Plaintiff thought he had canceled the subscription, a representative of EcoShield emailed Plaintiff an invoice for $250.00, labeled "Annual Commitment Discount Payback."

50. There is no "Annual Commitment Discount" mentioned in Plaintiff's Service Agreement.

51. Moreover, Plaintiff complied with any "Annual Commitment" because he paid for over one year of Defendant's subscription.

52. Upon information and belief, EcoShield uses the "Initial Discount" as a hidden cancellation fee regardless of when a customer cancels.

53. Upon information and belief, EcoShield intentionally withholds information revealing the true nature of its cancellation fee to induce consumers to purchase subscriptions with EcoShield.

54. Upon information and belief, if a customer does not pay EcoShield's unlawful cancellation fee, EcoShield will send that customer's account to collections.

55. After being told he could not cancel his subscription without paying the $250 cancellation fee, Plaintiff paid $250 to EcoShield.

56. Upon information and belief, had Plaintiff not paid the $250 fee, his credit could have been negatively impacted or he would have been subsequently billed for future service charges pursuant to his subscription.

57. Therefore, paying the unauthorized $250 cancellation fee was the only way to stop EcoShield's recurring subscription charges.

### C. EcoShield's Long History of Unauthorized Cancellation Fees

58. EcoShield's actions have harmed consumers across the country, resulting in legions of angry customers voicing their discontent online. For example, on the Trustpilot website, an average of 431 reviews has left EcoShield with a rating of 1.3 stars out of 5, with 86% of reviewers giving EcoShield 1 star. Numerous subscribers have left furious reviews complaining of deceptive billing and cancellation practices[5]:


**Buyer's beware**

Buyer's beware, THEY WILL CHARGE A $150 CANCELLATION FEE!!! I had the unfortunate experience dealing with this company. Trust the reviews they are awful. Truly terrible customer service, you will never be able to contact them once they have your money which is laughable considering the price they charge (they are one of the more expensive companies out there).

[5] *See* https://www.trustpilot.com/review/www.ecoshieldpest.com?page=8&stars=1.

**It costs more than you expect and they…**

It costs more than you expect and they want you to pay $400 to get out of the contract.

**Date of experience:** August 30, 2024

**Stay away from this company**

Stay away from this company! It's a scam!... they sign you up for way to much, then when you cancel, they offer same service for half price, charge you the sign up fee then try to get another $200 separately for another cancellation fee. This company is a total rip off... wish I had known!

**Date of experience:** May 17, 2024

**Lied to me to sign up**

Lied to me to sign up, then a huge cancelation fee

**Date of experience:** May 01, 2024

**Another disappointed, overcharged customer**

First, pressured solicitation at my door. Second, their products do not work. Third, the quarterly fee turned into two bills, back-to-back and when you cancel, they charge a $150.00 "discount refund". This company is a rip-off. I am filing with the BBB and the Attorney General for their unethical business practices. Save yourself the trouble and don't use this company.

**Date of experience:** July 08, 2024

**I highly advise against doing business…**

I highly advise against doing business with this company. Hundreds of dollars for them to sweep some cobwebs from under eaves and deck. Zero reduction is insects. Made 3 visits to my home, called to cancel after last visit and got me for another $200 for early termination fee. Most if not all 5 star reviews for EcoShield on Google are coerced by the company. Trustpilot reviews are a better representation of what to expect. Sign up at your own risk.

**Date of experience:** December 19, 2023

**The service is pathetic**

The service is pathetic , they make it impossible to cancel and will also charge you to cancel.

**Date of experience:** June 19, 2024

**I was bothered by sales rep when I was…**

I was bothered by sales rep when I was working outside felt pressured into it I finally agreed to one year after the one year not seeing any change and past activity I went to cancel and was told that I was under a 24 month contract and had to perform at least another two services in order to avoid an early cancellation fee of 200 and something dollars… Total BS I was very unhappy

**Date of experience:** June 22, 2024

**Absolutely horrible predatory business…**

Absolutely horrible predatory business practices! Stated that there wasn't a contract and then when we went to cancel ( at 1 month shy of a year) they said oh yes there was and we signed it electronically. want to charge $180 to cancel saying it was part of the special we got in the beginning that we owed. Pest service was severely lacking and they are far more over priced than the competitors in the community .Customer service was of zero help!

**Date of experience:** May 23, 2024

**We hired Eco Shield and we where told…**

We hired Eco Shield and we where told that we would be billed quarterly at 216 dollars, well in two months we have been billed three times. We called to find out the reason and they told us those where extra services that we did not ask for and the sales person told us we would be able to cancel at any time and they told us we have to pay a $ 201 cancelation fee. this is by far the worst company ever.....

**Date of experience:** June 03, 2024

**Big scam - do not sign up**

Don't sign up for this! I made the mistake of committing for two years and got slapped with a $200 fee for early cancellation. But that's not the worst part—their products are a total failure. They sprayed for ants in my house, and the ants kept coming. They set a rat trap in my yard, and the rats ignored it. They treated my front porch for cobwebs, and I ended up with even more! Completely useless. Save your money and buy something from Home Depot that actually works. This is a total scam!

**Date of experience:** August 16, 2024

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all EcoShield customers in the United States (including customers of any successors or predecessors of EcoShield) who entered into a service agreement with EcoShield at any time from the longest applicable statute of limitations period to the date of judgment and were later charged a cancellation fee and whose service agreement does not contain a forum selection clause designating "any state court located in Maricopa County, Arizona" as the exclusive forum for resolution of disputes arising from EcoShield's contract (the "Class").

60. As alleged throughout this Complaint, the Class's claims all derive directly from a single course of conduct by Defendants. Defendants have engaged in uniform and standardized conduct toward the Class and this case is about the responsibility of Defendants, at law and in equity, for their knowledge and conduct in deceiving their customers and breaching their form contract. Defendants' conduct did not meaningfully differ among individual Class Members in their degree of care or candor, or their actions or inactions.

61. Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer,

director, employee, legal representative, predecessor, successor, or assignee of Defendants. Also excluded are federal, state and local government entities; and any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff.

62. Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class when Plaintiff files his motion for class certification.

63. Plaintiff does not know the exact size of the Class since such information is in the exclusive control of Defendants. Plaintiff believes, however, that the Class encompasses thousands of consumers whose identities can be readily ascertained from EcoShield's records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

64. The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to each Class Member in compliance with all applicable federal rules.

65. Plaintiff is an adequate class representative and has no conflicts with the interests of any other members of the Class.

66. Plaintiff's claims are typical of the claims of the Class. Plaintiff and the other members of the Class were subject to the same or similar conduct engineered

by Defendants. Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct.

67. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff has retained competent and experienced class action attorneys to represent his interests and those of the Class.

68. Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a. Whether Defendants' conduct breached the Service Agreement;

b. Whether Defendants' conduct breached the covenant of good faith and fair dealing;

c. Whether Defendants' conduct violates applicable consumer protection statutes;

d. Whether Defendants' conduct violates applicable common law;

e. Whether Class Members have been injured by Defendants' conduct;

f. Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

g. The extent of class-wide injury and the measure of damages for those injuries.

69. A class action is superior to all other available methods for resolving this controversy because: (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct; (3) Defendants have acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

70. Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

a. Whether Defendants' conduct breached the Service Agreement;

b. Whether Defendants' conduct breached the covenant of good faith and fair dealing;

c. Whether Defendants' conduct violates the applicable consumer protection statutes;

d. Whether Defendants' conduct violates the applicable common law;

e. Whether Defendants wrongfully retained dominion over Class Members' monetary property and/or time value of monetary property;

f. Whether Class Members have been injured by Defendants' conduct; and

g. Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

71. Accordingly, this action satisfies the requirements set forth under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

## COUNT I

## BREACH OF CONTRACT
## (ON BEHALF OF THE NATIONWIDE CLASS)

72. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

73. Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

74. Plaintiff and all Class Members contracted with EcoShield by agreeing to the Service Agreement (or a materially similar contract).

75. The contracts between EcoShield and Class Members do not authorize EcoShield's cancellation fee practices.

76. Plaintiff's contract did not contain an "Annual Commitment Discount" or contain any provision requiring Plaintiff to repay an "Annual Commitment Discount." Defendants charged Plaintiff an "Annual Commitment Discount Payback" without contractual authorization.

77. To the extent an "Annual Commitment Discount" could be read into the contract, Plaintiff complied with that Annual Commitment by paying for over one year of Defendants' subscription.

78. To the extent the unauthorized cancellation fee is claimed to be a payment of the Initial Discount, the use of the term "Annual Commitment Discount Payback" indicates that EcoShield interpreted the purpose of the Initial Discount to be to ensure a customer maintained enrollment for a year. Because Plaintiff did maintain enrollment for over a year, Defendants breach the contract by applying this fee to Plaintiff.

79. EcoShield breached its contracts with Class Members by charging unauthorized cancellation fees.

80. Plaintiff and all Class Members suffered damages by being charged an unauthorized cancellation fee.

81. EcoShield's contracts with its customers are contracts of adhesion.

82. There was a large disparity of bargaining power between EcoShield and its customers when it came to the terms of EcoShield's customer contract.

83. EcoShield drafted the contracts signed by Class Members, and as such, to the extent there is any ambiguity or vagueness in those contracts, that ambiguity or vagueness should be construed against EcoShield.

84. Defendants knew or should have known that their conduct breached the Service Agreement.

85. Plaintiff and Class Members suffered monetary damages as a result of Defendants' conduct.

86. Defendants are liable to Plaintiff and Class Members for actual damages sustained.

## COUNT II

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (ON BEHALF OF THE NATIONWIDE CLASS)

87. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

88. Plaintiff brings this claim on his own behalf and on behalf of each member the Class.

89. Every contract contains an implied covenant of good faith and fair dealing. The implied covenant is an independent duty and may be breached even if there is no breach of the contract's express terms.

90. The implied covenant prohibits either party from acting in a way to impair the rights of the other party to receive the benefits of their agreement.

91. Plaintiff reasonably expected that EcoShield would not charge him a cancellation fee.

92. To the extent there was any Annual Commitment contained in the contract, Plaintiff complied with such Annual Commitment by paying for over one year of Defendants' subscription. Defendants thereby breached the covenant of good

faith and fair dealing by applying the Annual Commitment Discount Payback to a customer who complied with any Annual Commitment contained within the contract.

93. To the extent the unauthorized cancellation fee is claimed to be a payment of the Initial Discount, the use of the term "Annual Commitment Discount Payback" indicates that EcoShield interpreted the purpose of the Initial Discount to be to ensure a customer maintained enrollment for a year. Because Plaintiff did maintain enrollment for over a year, Defendants breach the covenant of good faith and fair dealing by applying this fee to Plaintiff.

94. Plaintiff and Class Members suffered monetary damages as a result of Defendants' conduct.

95. As a result of Defendants' breaches, EcoShield is liable to Plaintiff and Class Members for damages and attorneys' fees and expenses.

## COUNT III

## CONSUMER PROTECTION VIOLATIONS
## (ON BEHALF OF THE NATIONWIDE CLASS APPLYING GEORGIA LAW OR ON BEHALF OF INDIVIDUAL STATE SUBCLASSES APPLYING THE LAW OF THOSE STATES)

96. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

97. Plaintiff brings this claim on his own behalf and on behalf of each member the Class.

98. Plaintiff brings this count either on behalf of a nationwide class of customers applying Georgia law or statewide subclasses for each state in which EcoShield does business pursuant to the laws of those states.

99. EcoShield engaged in unfair and deceptive business practices pursuant to Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393, which declares unlawful "deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade[,]" *see id.* at (a), including:

***

(b)(9) Advertising goods or services with intent not to sell them as advertised;

***

(b) (11) Making false or misleading statements concerning the reasons for, existence of, or amounts of price reductions"

100. EcoShield engaged in consumer transactions with Plaintiff and all proposed Class Members.

101. EcoShield engaged in an unfair and deceptive scheme to disguise its cancellation fee as a "discount."

102. EcoShield knew that this practice was misleading.

103. The Service Agreement's failure to adequately explain EcoShield's cancellation fee practices also constitutes a material omission.

104. Through their deceptive scheme as alleged throughout this Complaint, Defendants engaged in deceptive acts or practices that violated the Georgia Fair Business Practices Act.

105. Defendants systematically misrepresented, concealed, suppressed, and omitted material facts relating to the cancellation fee in the course of their business.

106. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business and significantly impact a substantial portion of the purchasing public as actual or potential customers of Defendants.

107. Defendants knew or should have known that their conduct constituted a deceptive practice under the Georgia Fair Business Practices Act and any other relevant applicable consumer protection statutes.

108. Plaintiff and Class Members suffered monetary damages as a result of Defendants' conduct.

109. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

110. Defendants' violations were intentional.

111. Defendants are liable to Plaintiff and Class Members for actual damages sustained plus three times the amount of actual damages plus costs and attorneys' fees as determined by the court for intentional violation of the Georgia Fair Business Practices Act.

112. As alleged herein, Defendants knew their representations and omissions about the cancellation fee were materially misleading.

113. The states in which EcoShield does business have materially identical consumer protection statutes entitling consumers to damages for EcoShield's deceptive practices.

114. Pursuant to those materially identical consumer protection statutes, consumers are protected against deceptive acts or practices, misrepresentations, or omissions which affect business, trade, or commerce.

115. Plaintiff sent counsel for Defendants a demand letter pursuant to Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-399(b) on June 16, 2025. Counsel for Defendants agreed to accept service of this demand letter.

116. In addition to the Georgia Fair Business Practices Act, EcoShield violated at least the following materially identical statutes:

A. Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et seq.*;

B. California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;[6]

C. Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 *et seq.*;

[6] Pursuant to Cal. Civ. Code § 1782, Plaintiff shall send a notice and demand letter by registered mail to EcoShield.

D. Delaware Consumer Fraud Act, Del. Code. Ann. Tit. 6, §§2511 *et seq*.;

E. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*.;

F. Hawaii Unfair and Deceptive Practices Act, Haw. Rev. Stat. §§ 480-1 *et seq*.;

G. Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS §§ 505/1 *et seq*.;

H. Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et seq*.;[7]

I. Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623 *et seq*.;

J. Maryland Consumer Protection Act, Md. Commercial Law Code Ann. §§ 13-303 *et seq*.;

K. Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 *et seq*.;

L. Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68 *et seq*.;

M. Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 *et seq*.;

N. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq*.;

[7] Because Defendants' deception was intentional, as part of a scheme, artifice, or device with intent to defraud or mislead, Ind. Code. § 24-5-0.5-2(a)(8), Plaintiff is exempt from this statute's pre-suit notice requirement.

O. New York General Business Law § 349;

P. Ohio Consumer Sales Practice Act, Ohio Rev. Code Ann. §§ 1345.01 *et seq.*;[8]

Q. Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, §§ 751 *et seq.*;

R. Oregon Unlawful Trade Practices Law, Or. Rev. Stat. §§ 646.605 *et seq.*;

S. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.*;

T. Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq.*;

U. Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.*;

V. Utah Consumer Sales Practice Act, Utah Code Ann. § 13-11-5 *et seq.*;

W. Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et seq.*

X. Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq.*; and

Y. Wisconsin Consumer Act, Wis. Stat. §§ 100.18 *et seq.*

---

[8] Defendants had prior notice that their acts were deceptive under Ohio law, as their conduct violated numerous rules promulgated by the Ohio Attorney General pursuant to Ohio Rev. Code Ann. § 1345.05(B)(2), including but not limited to Ohio Admin. Code 109:4-3-02(A)(2)(g) and (C), 109:4-3-04, and 109:4-3-11(A)(5) and (12).

117. To the extent the Court determines that varying state laws apply to a Class Member's consumer protection claim, Plaintiff will establish that the elements of each state's consumer protection statutes have been satisfied.

**COUNT IV**

**CONVERSION**
**(ON BEHALF OF THE NATIONWIDE CLASS)**

118. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

119. Plaintiff brings this claim on his own behalf and on behalf of each member of a nationwide Class under Georgia law or the laws of each of the states where Defendants do business that permit an independent cause of action for conversion, or, alternatively, on behalf of each member of individual state subclasses under the laws of those States.

120. In all states where Defendants do business, there is no material difference in the law of conversion as applied to the claims and questions in this case.

121. Plaintiff and Class Members own and have a right to possess the money that is in their respective bank accounts, internet payment accounts, and/or credit cards.

122. Defendants substantially interfered with Plaintiff's and Class Members' possession of this money by knowingly and intentionally making

unauthorized charges to their bank accounts, internet payment accounts, and/or credit cards for EcoShield's unlawful cancellation fees or by sending Plaintiff's and Class Members' accounts to debt collectors for collection of these improper fees.

123. Defendants wrongfully retained dominion over this monetary property and/or the time-value of the monetary property.

124. Plaintiff and the Class have been damaged by Defendants' wrongful taking and/or possession of such money from their bank accounts, internet payment accounts, and/or credit cards in an amount that is capable of identification through Defendants' records.

125. By reason of the foregoing, Defendants are liable to Plaintiff and the Class for conversion in an amount to be proved at trial and any punitive damages, fees, and costs allowed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Issue an order certifying the Class defined above, appointing the Plaintiff as Class representative, and designating Wittels McInturff Palikovic and Weiner & Sand LLC as Class Counsel;

(b) Find that Defendants have committed the violations of law alleged herein;

(c) Determine that Defendants have been unjustly enriched as a result of their wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(d) Enter an order granting all appropriate relief including injunctive relief on behalf of the Class under applicable law;

(e) Render an award of compensatory damages and statutory damages (including treble, statutory, or other damages) of no less than $5,500,000, the exact amount of which is to be determined at trial;

(f) Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

(g) Declare that Defendants have committed the violations of law alleged herein;

(h) Render an award of punitive damages and/or any statutory or treble damages;

(i) Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(j) Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiff demands that a jury determine any issue triable of right.

## NOTICE TO ATTORNEYS GENERAL

A copy of this Complaint will be electronically mailed to the Attorney General of the State of New Jersey within twenty-four hours of its filing, pursuant to N.J.S.A. § 56:8-20.

A copy of this Complaint will be mailed to the Attorney General of the State of Illinois pursuant to 815 ILCS § 505/10a(d).

A copy of this Complaint will be mailed to the Attorney General of the State of Georgia within 20 days pursuant to Ga. Code Ann. § 10-1-399(g).

A copy of this Complaint will be mailed to the Attorney General of the State of Washington pursuant to Wash. Rev. Code § 19.86.095.

A copy of this Complaint will be mailed to the Attorney General of the State of Michigan pursuant to Mich. Comp. Laws § 445.912(1).

Dated: July 18, 2025

/s/ J. Burkett McInturff
J. Burkett McInturff (*pro hac vice motion to be filed*)
Daniel J. Brenner (*pro hac vice motion to be filed*)
Daniel J. Kieselstein (*pro hac vice motion to be filed*)
**WITTELS MCINTURFF PALIKOVIC**
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Tel: (914) 775-8862
jbm@wittelslaw.com
djb@wittelslaw.com
djk@wittelslaw.com

/s/ Andrew L. Weiner
Jeffrey B. Sand
GA Bar No. 181568
Andrew L. Weiner
GA Bar No. 808278
**WEINER & SAND LLC**
6065 Roswell Road, Suite 700-121
Sandy Springs, GA 30328
(404) 205-5029 (Tel.)
(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
js@wsjustice.com
aw@wsjustice.com

*Counsel for Plaintiff and the Proposed Class*